E-FILED
Monday, 11 June, 2007  12:54:36 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| WENDY'S INTERNATIONAL, INC., | ) |
| Plaintiff, | ) ) ) No. _____ |
| v. | ) ) ) Judge _____ |
| JAMES P. MAY and MICHAEL QUAGLIANO, | ) EQUITABLE RELIEF SOUGHT ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Wendy's International, Inc. ("Wendy's"), by its attorneys, as and for its Complaint against Defendants James P. May and Michael Quagliano (collectively, the "Defendants"), alleges as follows:

### NATURE OF ACTION

1.  Wendy's, a company comprised of approximatley 6,500 individual restaurants, most of which are franchised, files this action against the Defendants alleging federal and state trademark infringement, unfair competition and misappropriation of trade secrets.

2.  The Defendants are operating a restaurant in Mattoon, Illinois and holding that restaurant out to the public as an authorized Wendy's restaurant franchise without having been granted a franchise or a license to use the Wendy's trademarks, trade dress and other proprietary information.

3.  Notwithstanding several demands to cease their unauthorized operation of the Mattoon restaurant and use of the Wendy's trademarks, trade dress and other proprietary

information, Defendants continue to use the Wendy's trademarks in violation and in defiance of state and federal law.

## PARTIES

4.  Wendy's is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Dublin, Ohio. Wendy's is in the business of operating a network of, and licensing others to operate, distinctive quick service restaurants which offer a limited menu of prepared to order hamburgers, chili, salads, assorted chicken and other sandwiches, and complimentary items under Wendy's service marks, trademarks, trade names and related intellectual property rights. The Wendy's network is comprised of approximately 6,500 individual restaurants and franchises throughout the world operated by Wendy's and its franchisees.

5.  Defendant James P. May ("May") is, on information and belief, a resident and citizen of the State of Illinois.

6.  Defendant Michael Quagliano ("Quagliano") is, on information and belief, a resident and citizen of the State of Illinois.

7.  May and Quagliano are controlling shareholders, and operators of, various Wendy's franchise restaurants doing business in Illinois, Indiana, Missouri, Iowa and Wisconsin. As detailed below, however, they also own and operate a fast-food business located at 1209 Broadway Ave. E., Mattoon, Illinois.

## JURISDICTION AND VENUE

8.  This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, under the laws of the State of Illinois and under the common-law.

9. This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. This Court also has original subject matter jurisdiction of the unfair competition claims set forth herein under 27 U.S.C. §1338(b), in that such claims are joined with a substantial and related claim under the trademark laws of the United States.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## WENDY'S SYSTEM, REGISTERED TRADE AND SERVICE MARKS

11. Wendy's is one of the largest quick service restaurant franchise systems in the United States.

12. Recognizing that the maintenance of uniform high quality standards is essential to protect the image of Wendy's restaurants, Wendy's has developed, and is the sole and exclusive owner of, a distinctive food service system (the "Wendy's System") relating to the establishment and operation of "Wendy's Old Fashioned Hamburgers"® restaurants featuring, among other things, hamburgers, chili, salads, assorted chicken and other sandwiches, and complimentary items.

13. Under the Wendy's System qualified franchisees are required to first obtain a Real Estate Letter from Wendy's which gives them the exclusive right to search for real estate sites for potential Wendy's restaurants within the geographic area identified. Prospective franchisees are generally responsible for identifying proposed sites. Once a site is identified, the prospective franchisee submits a Site Acceptance Request form ("SAR") to Wendy's for acceptance of that

specific site. If Wendy's accepts the site as meeting its criteria, then the prospective franchisee applies for franchise rights and the matter goes before Wendy's Franchise Review Council ("FRC") for approval of the actual franchise grant. If the grant is approved by the FRC, the parties execute a FRC Approval Letter which includes various terms and conditions associated with any franchise grant. Subject to satisfaction of any requirement in the FRC Approval Letter, franchise agreements are subsequently sent for execution. These franchise agreements provide the terms for construction, opening and operation of an authorized Wendy's restaurant at the approved site. A $25,000 technical assistance fee is required to be paid by the prospective franchisee as set forth in the franchise agreement.

14. The Wendy's System includes, among other things, the following elements: (a) methods and procedures for the preparation and serving of food and beverage products; (b) special ingredients, confidential recipes for food products, and distinctive service accessories; (c) methods of achieving quality and quantity control and procedures designed to be advantageous to restaurant operators and consumers; (d) plans and specifications for distinctive standardized premises, featuring characteristic interior and exterior style, decor, design, furnishings, equipment layout, and interior and exterior signage; (e) a uniform method of standards, specifications and procedures for operating Wendy's restaurants, which method is set forth in "Wendy's Confidential Manual of Operations" (the "Confidential Operations Manual"); (f) a public image that each restaurant is a unit of an established franchise system and that all are operated with uniform standards of service and product quality and portions; and (g) such copyrights and trade secrets as have been and may from time to time be developed, which are owned by Wendy's or its affiliates and which are disclosed to its franchisees in confidence for their use in connection with the construction and operation of authorized Wendy's restaurants.

15. To ensure the uniform application of the Wendy's System throughout the Wendy's network, and in recognition of the importance of operating each Wendy's restaurant in

conformity with Wendy's standards and specifications, Wendy's provides each franchisee with a copy of its Confidential Operations Manual, which sets forth in detail all of the procedures, methods and standards for the safe and proper operation of a Wendy's restaurant. For example, the Confidential Operations Manual sets forth the standards and requirements regarding: (i) the preparation of menu items; (ii) the temperatures at which product must be maintained; (iii) the temperature to which product must be cooked; (iv) the handling of product; (v) sanitation, both of the Restaurant in general and for all food preparation and contact items and surfaces; (vi) cleanliness; and (vii) customer service.

16. In addition to clearly setting forth each franchisee's contractual obligations with respect to compliance with Wendy's standards and specifications, Wendy's goes to great lengths to verify that franchisees are trained to comply with, and do in fact comply with, those standards and specifications. For example, so as to further ensure compliance with Wendy's standards and specifications and the Wendy's System, each Wendy's operator (and the franchisee's initial management employees and restaurant crew) is required to attend and successfully complete, prior to their opening of a new Wendy's restaurant, Wendy's training program. Further, to help ensure that its standards and the Wendy's System are maintained once a Restaurant opens, Wendy's employs various field personnel (known as Franchise Area Directors) who regularly visit and review the operations of Wendy's franchisees to evaluate their compliance with Wendy's franchise agreements and with Wendy's food safety, quality assurance and operational standards. Wendy's also maintains a Quality Assurance Department which likewise visits and reviews the operations of Wendy's restaurants.

17. To identify the source, origin and sponsorship of Wendy's restaurants, products and services, and to distinguish those restaurants, products and services from those established, made, offered and sold by others, Wendy's has extensively used certain trademarks, service

marks, trade names, logos, emblems and indicia of origin, including but not limited to the names and marks "Wendy's"®, "Old Fashioned Hamburgers"®, and "Quality is Our Recipe"®.

18. Wendy's maintains exclusive control and exclusive use of numerous trademarks and service marks which are owned by a Wendy's affiliate and registered on the Principal Register of the United States Patent and Trademark Office (the "Marks"). Identification and registration information regarding these trademarks and service marks is provided in the chart annexed hereto as Exhibit A and incorporated herein by reference.

19. The registrations of the Marks continue in full force and effect, and all those eligible are incontestible under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

20. Wendy's has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that Wendy's remains the exclusive user of the Marks.

21. Wendy's has continuously used each of the Marks in interstate commerce in connection with the promotion, sale and franchising of Wendy's restaurants and the promotion and sale of Wendy's products throughout the United States, including the State of Illinois, since the date of their registration.

22. Wendy's has the exclusive right to use and license the Marks and derivations thereof, as well as the distinctive Wendy's System with which franchisees offer Wendy's products to the public under the Marks. Pursuant to Franchise Agreements entered into by and between Wendy's and its franchisees, Wendy's grants franchises to qualified persons to own and operate Wendy's restaurants using the Marks and the Wendy's System, but only in such manner and at such locations as are expressly authorized by Wendy's.

CHGO1\30992804.6

23. Wendy's and its franchisees use the Marks as the marks and trade identity by which the products offered by Wendy's and its franchisees are distinguished from other quick service restaurants and the products made and sold by them.

24. Wendy's and its franchisees have extensively advertised and promoted Wendy's restaurants under the Marks throughout the United States and through various media by, among other things, prominently displaying the marks on the signs, menus, containers, and displays associated with Wendy's restaurants, and on restaurants' interior and exterior, letterheads, bills, direct mail advertising, telephone directory advertising, periodicals and television and radio advertising distributed throughout the United States, including the State of Illinois.

25. As a result of such expenditures, the products offered by Wendy's and its franchisees under the Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including the State of Illinois. Further, the Marks have acquired valuable and strong secondary meanings, and Wendy's has established goodwill of substantial and extraordinary value for the Marks throughout the United States.

26. The Marks are, and have been at all times relevant, among the famous trademarks in the United States.

### The Parties' Relationship

27. Defendants have been Wendy's franchisees operating authorized Wendy's restaurants for more than 10 years. In total, Defendants own and operate 20 Wendy's restaurants in Illinois, Missouri, Iowa, Indiana and Wisconsin.

28. Each of the Wendy's restaurants owned and operated by Defendants is a separate franchise governed by a written Wendy's International, Inc. Unit Franchise Agreement (the

"Franchise Agreement") pursuant to which Defendants were granted a franchise to operate a Wendy's Old Fashioned Hamburgers Restaurant using the Marks and the Wendy's System at a particular location, all as fully set forth in the respective Franchise Agreements. A true and correct copy of one of Defendants' Franchise Agreements is annexed hereto as Exhibit B and incorporated herein by reference.

29. With respect to their use of the Marks, Defendants understood, acknowledged and agreed, under Section 7.2 of the Franchise Agreements, that they would use those marks "only in the manner authorized and permitted by [Wendy's]. Pursuant to Section 14.3.E. of the Franchise Agreements, it is an event of default, and grounds for termination of the Franchise Agreements, if "Franchisee misuses or makes any unauthorized use of the [Wendy's] Marks or otherwise materially impairs the goodwill associated therewith . . . ."

30. In recognition of the importance of Wendy's high standards of quality, cleanliness, appearance and service, and further recognizing the necessity of operating each Wendy's restaurant in conformity with Wendy's standards and specifications, Defendants agreed, under Section 6.8 of each of their Franchise Agreements, to "meet and maintain the highest health standards and rating applicable to the operation of the Restaurant." Defendants further acknowledged, under Section 6.9 of the Franchise Agreements, the importance of "at all times maintain[ing] the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith mak[ing] such additions, alterations, repairs, and replacements thereto as may be required for that purpose . . . including, without limitation, such periodic repainting or replacement of signs, furnishings, equipment, and decor as Franchisor may reasonably direct."

31. Defendants also acknowledged, under Section 6.13 of the Franchise Agreements, the necessity to "comply with [Wendy's] requirements and specifications concerning the quality, service, and cleanliness of the Restaurant, the products and services sold, offered for sale, or

provided at the Restaurant, and the operation of the Restaurant under the System, as those requirements may be specified by [Wendy's] in this Agreement, in the [Operating] Manual . . . ."

32.  Defendants further acknowledged the importance under their Franchise Agreements to maintain and observe Wendy's quality, service and cleanliness standards and specifications (Franchise Agreement at §§ 14.3.A and 14.3.C), and that Wendy's would not knowingly permit an immediate threat or danger to public health or safety resulting from the maintenance or operation of a Wendy's restaurant. (Id. at § 14.2.C.)

### THE MATTOON RESTAURANT

33.  In or about early November 2006, Wendy's received from Defendants a request for real estate letters for various sites, including land and a building where a former Wendy's restaurant had been operated at 1209 Broadway Ave. E., Mattoon, Illinois (the "Restaurant"). A true and correct copy of November 22, 2006 correspondence is attached as Exhibit C.

34.  On April 20, 2007, after careful consideration and analysis regarding the surrounding market area, Wendy's authorized the Defendants "to investigate and locate for Wendy's consideration a real estate site at 1209 East Broadway Avenue, Mattoon, IL." A true and correct copy of the April 20, 2007 correspondence is attached as Exhibit D.

35.  The April 20, 2007 letter expressly provided that the Defendants would need to complete and return an SAR and that "it [would] be necessary to authorize a real estate site review trip to evaluate the location." The April 20th letter further states:

> Wendy's Franchise Review Council reserves the absolute right to approve the granting of franchise rights for this location. In connection with such approval, the Franchise Review Council will review at the time of your franchise request your past and current financial status, the financial and ownership structure for the proposed site, your operating history, ... along with any other issues or concerns regarding the franchise relationship or

> development of the site…Please keep in mind that real estate acceptance does not necessarily mean the grant [of franchise and licensing rights] will be approved, and you should not presume such approval. Therefore, any and all expenses which you may incur prior to the Franchise Review Council grant are incurred at your own risk.

36. The April 20, 2007 letter further stated that, "[i]f the grant is approved by the Franchise Review Council, you will receive a Franchise Letter of Intent for your signature. The franchise grant will be based on the then current franchise agreement, terms, conditions and policies."

37. On April 20, 2007, Daniel Rogers, Wendy's Regional Facilities Director, conducted an on-site inspection of the Restaurant and prepared a report of his findings. A true and correct copy of the Facility Assessment Report for the Restaurant is attached as Exhibit E. The Facility Assessment Report estimated remodeling costs of approximately $158,550.00 and referenced other costs associated with prior water damage and evidence of potential mold.

38. On May 24, 2007, the Facility Assessment Report was sent to the Defendants. The cover letter for the Facility Assessment Report stated that "[t]he completion of all work/upgrades on the Reports will be a condition to granting you the franchise and licensed rights for opening these restaurants." A true and correct copy of the May 24, 2007 correspondence is attached as Exhibit F.

### Defendants' Unauthorized Use of the Marks

39. Wendy's believed Defendants to be diligently working to address the deficiencies set forth in the Facility Assessment Report; however, without completing the required remodeling, receiving approval from the Franchise Review Council or execution of a franchise agreement granting franchise and licensing rights to the Defendants for the Mattoon Restaurant, Defendants opened the Restaurant and began holding the Restaurant out as an authorized

Wendy's franchise. A copy of photographs taken at the location on June 2, 2007 are attached as Exhibit G.

40. On May 29, 2007, Wendy's advised Defendants in writing that their operation of the Restaurant was not authorized and requested that the Restaurant be closed. A true and correct copy of the May 29, 2007 correspondence is attached as Exhibit H. The May 29, 2007 correspondence stated:

> We hereby demand that you IMMEDIATELY close this Restaurant, and cease its operation as a Wendy's and cease the use of the Wendy's name, trademarks and proprietary rights in connection with the Mattoon Restaurant. Wendy's still awaits the receipt of certain information and documentation from you in connection with reviewing your request to obtain the franchise rights to this store, Most important, however, is the remodeling and upgrade work (about which you have been aware) that must be completed as a condition to obtaining a franchise grant. Please understand that your failure to adhere to Wendy's request for IMMEDIATE closure will result in Wendy's pursuing legal actions against you.

41. Defendants refused to comply with Wendy's request for closure and have failed to (a) obtain final approval from the FRC; (b) be issued or execute a FRC Approval Letter (c) complete necessary remodeling itemized in the Facility Assessment Report, (d) provide acceptable documentation that water damage and potential mold issues have been fully assessed and remedied, (e) pay the required $25,000 Technical Assistance Fee, or (f) be issued or execute a franchise agreement for the location.

42. On June 4, 2007, Wendy's counsel again requested that Defendants cease operation and unauthorized use of the Marks. A true and correct copy of the June 4, 2007 correspondence is attached as Exhibit I. The June 4th Demand Letter states:

> It has recently come to our attention that you are operating the Restaurant using the Wendy's proprietary trademarks, System and know-how without prior authorization from Wendy's. In

> particular, we have learned that you are operating the Restaurant as if it was an authorized Wendy's® franchise without satisfying the Wendy's requirements for operation of a Wendy's restaurant, including, but not limited to, meeting restaurant remodeling and upgrade criteria as well as execution of a Wendy's franchise agreement granting franchise and licensing rights. In addition, your Restaurant is displaying the Wendy's® logos without Wendy's authorization and consent. This conduct is wholly improper, as it violates various federal and state trademark laws, and will not be tolerated.. . . Accordingly, Wendy's requests that you immediately cease operation of the Restaurant in violation of federal and state laws. In particular, Wendy's demands that you immediately take all steps necessary to de-identify your Restaurant by removing all Wendy's® logos from your location and ceasing to hold out the Restaurant as an authorized Wendy's franchise.

43. In response to Wendy's demands to cease operation of the Restaurant and to discontinue the unauthorized use of the Marks, Defendants have refused to comply and have instead openly marketed the Restaurant as an authorized Wendy's restaurant. A true and correct copy of a June 5, 2007 article appearing in the Mattoon Journal Gazette is attached as Exhibit J.

44. On June 6, 2007, Mr. Rogers again visited the Restaurant to determine whether Defendants had complied with Wendy's request to close the Restaurant and cease the unauthorized use of the Marks. During his visit, Mr. Rogers observed that: (1) the Restaurant remains open, (2) Defendants continue their unauthorized use the Marks and (3) Defendants hold the Restaurant out to the consuming public as an authorized Wendy's restaurant.

45. Defendants refuse to close the Restaurant and continue their unauthorized and illegal use of the Marks.

46. Defendants' improper use of the Marks is without the license or consent of Wendy's, and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship.

47.     Defendants' improper use of the Marks has caused and will continue to cause irreparable harm to Wendy's in that, among other things, customers are likely to be confused by the false belief that the Restaurant is an authorized "Wendy's®" and any consumer dissatisfaction with Defendants' Restaurant, or with products and services offered in connection therewith, will be attributed to Wendy's and the entire Wendy's network.

48.     Defendants have received actual notice of their violation and infringement of the Marks and have constructive notice of Wendy's rights in the Marks and the registrations thereof pursuant to 15 U.S.C. § 1072.

## COUNT I
## LANHAM ACT - TRADEMARK AND SERVICE MARK INFRINGEMENT

49.     Wendy's realleges and incorporates by reference ¶¶ 1 through 48 of its Complaint, inclusive, as and for this ¶ 49, as if fully set forth herein.

50.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Marks, and Defendants' sale, offering for sale, distribution or advertising of goods under the Marks has caused and is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1).

51.     As a direct and proximate result of Defendants' infringement, Wendy's has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

52.     Wendy's has no adequate remedy at law because the Marks are unique and represent to the public Wendy's identity, reputation, and goodwill, such that damages alone cannot fully compensate Wendy's for Defendants' misconduct.

53. Unless enjoined by the Court, Defendants will continue to use and infringe the Marks, to Wendy's irreparable injury.

## COUNT II
## LANHAM ACT - TRADEMARK DILUTION

54. Wendy's realleges and incorporates by reference ¶¶ 1 through 53 of its Complaint, inclusive, as and for this ¶ 54, as if fully set forth herein.

55. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Marks, and Defendants' sale, offering for sale, distribution or advertising of non-conforming goods under the Marks causes dilution of the distinctive quality of the Marks, in violation of 15 U.S.C. § 1125(c).

56. As a direct and proximate result of Defendants' infringement, Wendy's has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

57. Wendy's has no adequate remedy at law because its Marks are unique and represent to the public Wendy's identity, reputation, and goodwill, such that damages alone cannot fully compensate Wendy's for Defendants' misconduct.

58. Unless enjoined by the Court, Defendants will continue to use and infringe the Marks, to Wendy's irreparable injury.

## COUNT III
## LANHAM ACT - UNFAIR COMPETITION

59. Wendy's realleges and incorporates by reference ¶¶ 1 through 58 of its Complaint, inclusive, as and for this ¶ 59, as if fully set forth herein.

60. Defendants' acts, practices, and conduct constitute unfair competition, false designation of origin, false or misleading descriptions or representations of fact and false advertising and/or promotion, in that they are and/or were likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

61. As a direct and proximate result of Defendants' unfair competition, Wendy's has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

62. Wendy's has no adequate remedy at law because its Marks are unique and represent to the public Wendy's identity, reputation, and goodwill, such that damages alone cannot fully compensate Wendy's for Defendants' misconduct.

63. Unless enjoined by the Court, Defendants will continue to compete unfairly with Wendy's, to Wendy's irreparable injury.

## COUNT IV
## ILLINOIS DECEPTIVE TRADE PRACTICES ACT

64. Wendy's realleges and incorporates by reference ¶¶ 1 through 63 of its Complaint, inclusive, as and for this ¶ 64, as if fully set forth herein.

65. Defendants' acts, practices, and conduct in trade and commerce constitute unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in the conduct of Defendants' restaurants and in the furnishing of their goods in the State of Illinois, in that said conduct creates a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of Defendants with Wendy's

CHGO1\30992804.6

and the Wendy's System, or as to the origin, sponsorship, or approval of Defendants' services, in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1 et seq

66. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Wendy's has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

67. Wendy's has no adequate remedy at law because its Marks are unique and represent to the public Wendy's identity, reputation, and goodwill, such that damages alone cannot fully compensate Wendy's for Defendants' misconduct.

68. Unless enjoined by the Court, Defendants will continue to engage in unfair and deceptive trade practices, to Wendy's irreparable injury.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

69. Wendy's realleges and incorporates by reference ¶¶ 1 through 68 of its Complaint, inclusive, as and for this ¶ 69, as if fully set forth herein.

70. Defendants' acts, practices, and conduct constitute unfair competition, false designation of origin, false or misleading descriptions or representations of fact, false advertising, and/or unfair or deceptive trade practices, in that they are and/or were likely to cause confusion or to cause mistake, or to deceive others as to the affiliation, connection, or association of Defendants with Wendy's and the Wendy's System, or as to the origin, sponsorship, or approval of Defendants' goods and services, and constitute common law unfair competition.

71. As a direct and proximate result of Defendants' unfair competition, Wendy's has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

CHGO1\30992804.6

72. Wendy's has no adequate remedy at law because its Marks are unique and represent to the public Wendy's identity, reputation, and goodwill, such that damages alone cannot fully compensate Wendy's for Defendants' misconduct.

73. Unless enjoined by the Court, Defendants will continue to compete unfairly with Wendy's, and continue to cause Wendy's irreparable injury.

## COUNT VI
## Misappropriation Of Trade Secrets

74. Wendy's realleges and incorporates by reference ¶¶ 1 through 73 of its Complaint, inclusive, as and for this ¶ 74, as if fully set forth herein.

75. Wendy's operations manuals, detailing its methods, techniques, specifications, procedures, information, knowledge and systems concerning the operation of a quick service restaurant which offer a limited menu of prepared to order hamburgers, chili, salads, assorted chicken and other sandwiches, constitute trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq. and the common law of the State of Illinois.

76. Defendants acquired Wendy's proprietary information as a result of their operation of other Wendy's franchise stores, knowing that the information was confidential and proprietary, and knowing that the Wendy's franchisees are under a contractual obligation not to disclose it to others or use such information for unauthorized purposes.

77. Defendants' misappropriation of Wendy's trade secrets was willful and malicious, in that it was an intentional misappropriation and resulted from conscious disregard of Wendy's rights.

78.     Wendy's is entitled to damages in accordance with Section 4 of the Act measured in terms of a reasonable royalty for the use of Wendy's trade secrets in the operation of Defendants' Restaurant, together with reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Wendy's respectfully prays for the following relief against Defendants:

A.      A temporary, preliminary and permanent injunction enjoining Defendants, their affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them from:

1.  Operating the Restaurant as if it were an authorized Wendy's franchisee;

2.  Otherwise infringing or diluting the Marks;

3.  Causing likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products or services;

4.  Unfairly competing with Wendy's or its franchisees by way of operating the Restaurant;

5.  Committing unfair trade practices in the conduct of their business; and

6.  Misappropriating Wendy's trade secrets in the operation of the Restaurant;

B.      That Defendants be required to file with the Court and to serve upon Wendy's counsel within five (5) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

C.      An award of reasonable attorneys' fees, expenses and costs incurred by Wendy's in this action; and

CHGO1\30992804.6

D.    Such other relief as the Court deems just and proper.

WENDY'S INTERNATIONAL, INC.

By: _____
One of its Attorneys

Stephen L. Corn
**CRAIG & CRAIG**
1807 Broadway Avenue
Mattoon, IL 61938
(217) 234-6481


William J. Campbell (00378739)
Samuel B. Isaacson (06184323)
Peter M. Ellis (06271751)
**DLA PIPER US LLP**
203 N. LaSalle, Suite 1900
Chicago, IL    60601-1293
Tele: (312) 368-4000

*Attorneys for Plaintiff*
Wendy's International, Inc.

- 20 -

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Wendy's International, Inc.

### DEFENDANTS
James P. May and Michael D. Quagliano

(b) County of Residence of First Listed Plaintiff: Franklin County, OH
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Adams County, IL
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
William J. Campbell, DLA Piper US LLP, 203 N. LaSalle, Suite 1900, Chicago, IL 60610 (312) 368-4000

Attorneys (If Known): Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC Sec. 1114(1), 1125(c), 1125(a)
Brief description of cause:
Lanham Act Claim for unauthorized use of trademarks. Temporary Restraining Order Requested.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 06/08/2007
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____