## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| WENDY'S INTERNATIONAL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| JAMES P. MAY and MICHAEL QUAGLIANO, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff, Wendy's International, Inc. ("Wendy's"), by its attorneys, pursuant to Federal Rule of Civil Procedure 65, submits this memorandum of law in support of its motion for entry of a temporary restraining order enjoining Defendants, James P. May and Michael Quagliano, and those acting on their behalf or in concert with them, from (i) infringing Wendy's federally registered trademarks and service marks in violation of the Lanham Act, 15 U.S.C. § 1114(1), (ii) unfairly competing with Wendy's in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (iii) misappropriating Wendy's trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

### INTRODUCTION

This action arises out of Defendants' unlawful use of Wendy's trademarks and trade secrets in the operation of an unauthorized Wendy's restaurant at 1209 Broadway Ave. E., Mattoon, Illinois (the "Restaurant").  Wendy's is engaged in the business of operating, and granting franchises to others to operate, Wendy's Restaurants using the Wendy's system of operations, confidential information and trade secrets, and proprietary names and marks.

Although Defendants have not been granted a franchise to operate a Wendy's restaurant at the Restaurant, Defendants are operating a Wendy's restaurant at the Restaurant and using Wendy's trademarks and trade secrets in the operation of their unauthorized Wendy's Restaurant.

Notwithstanding Wendy's repeated demands that Defendants cease operating the Restaurant and cease using Wendy's trademarks and trade secrets at the Restaurant, Defendants continue to falsely and fraudulently hold the Restaurant out to the public as an authorized Wendy's restaurant, passing off the Restaurant as being sponsored by, affiliated with, or endorsed by Wendy's, when in fact it is not. Wendy's brings this Motion to enjoin Defendants' misconduct and pirating of Wendy's trademarks and trade secrets, and to bring to an end the consumer confusion which now exists as a result of Defendants' infringement of those marks and misappropriation of trade secrets. For the reasons set forth below, Wendy's Motion should in all respects be granted.

## STATEMENT OF FACTS

### A.    THE PARTIES

Wendy's is one of the largest quick service restaurant franchise systems in the United States. (*See* the June 8, 2007 Declaration of Kris Kaffenbarger ("Kaffenbarger Decl."), a true and correct copy of which is attached hereto as Exhibit 1, at ¶3.)

Defendant, James P. May ("May") and Defendant, Michael Quagliano ("Quagliano") are controlling shareholders, and operators of, twenty authorized Wendy's franchised restaurants doing business in Illinois, Indiana, Missouri, Iowa and Wisconsin. (Kaffenbarger Decl. at ¶4.) As detailed below, they also own and operate an unauthorized Wendy's Restaurant.

**B.**    **The Wendy's System and Marks**

Recognizing that the maintenance of uniform high quality standards is essential to protect the image of Wendy's restaurants, Wendy's has developed, and is the sole and exclusive owner of, a distinctive food service system (the "Wendy's System") relating to the establishment and operation of "Wendy's Old Fashioned Hamburgers"® restaurants featuring, among other things, hamburgers, chili, salads, assorted chicken and other sandwiches, and complimentary items. (Kaffenbarger Decl. at ¶5.) The Wendy's System includes, among other things, the following elements: (a) methods and procedures for the preparation and serving of food and beverage products; (b) special ingredients, confidential recipes for food products, and distinctive service accessories; (c) methods of achieving quality and quantity control and procedures designed to be advantageous to restaurant operators and consumers; (d) plans and specifications for distinctive standardized premises, featuring characteristic interior and exterior style, decor, design, furnishings, equipment layout, and interior and exterior signage; (e) a uniform method of standards, specifications and procedures for operating Wendy's restaurants, which method is set forth in "Wendy's Confidential Manual of Operations" (the "Confidential Operations Manual"); (f) a public image that each restaurant is a unit of an established franchise system and that all are operated with uniform standards of service and product quality and portions; and (g) such copyrights and trade secrets as have been and may from time to time be developed, which are owned by Wendy's and which are disclosed to its franchisees in confidence for their use in connection with the construction and operation of Wendy's restaurants. (Kaffenbarger Decl. at ¶6.)

To ensure the uniform application of the Wendy's System throughout the Wendy's network, and in recognition of the importance operating each Wendy's restaurant in conformity

with Wendy's standards and specifications, Wendy's provides each franchisee with a copy of its Confidential Operations Manual, which sets forth in detail all of the procedures, methods and standards for the safe and proper operation of a Wendy's Restaurants. (Kaffenbarger Decl. at ¶7.) For example, the Confidential Operations Manual sets forth the standards and requirements regarding: (i) the preparation of menu items; (ii) the temperatures at which product must be maintained; (iii) the temperatures to which product must be cooked; (iv) the handling of product; (v) sanitation, both of the Restaurant in general and for all food preparation and contact items and surfaces; (vi) cleanliness; and (vii) customer service. (Kaffenbarger Decl. at ¶7.)

In addition to clearly setting forth each franchisee's contractual obligations with respect to compliance with Wendy's standards and specifications, Wendy's goes to great lengths to verify that franchisees are trained to comply with, and do in fact comply with, those standards and specifications. (Kaffenbarger Decl. at ¶8.) For example, so as to further compliance with Wendy's standards and specifications and the Wendy's System, each Wendy's operator (and the franchisee's initial management employees and restaurant crew) is required to attend and successfully complete, prior to their opening of a Wendy's Restaurant, Wendy's training program. (Kaffenbarger Decl. at ¶8.) Further, to help ensure that its standards and the Wendy's System are maintained once a restaurant opens, Wendy's employs various field personnel (known as Franchise Area Directors) who regularly visit and review the operations of Wendy's franchisees to evaluate their compliance with Wendy's franchise agreements and with Wendy's food safety, quality assurance and operational standards. (Kaffenbarger Decl. at ¶8.) Wendy's also maintains a Quality Assurance Department which likewise visits and reviews the operations of Wendy's Restaurants. (Kaffenbarger Decl. at ¶8.)

To identify the source, origin and sponsorship of authorized Wendy's restaurants,

products and services, and to distinguish those restaurants, products and services from those established, made, offered and sold by others, Wendy's has extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to the names and marks "Wendy's"®, "Wendy's Old Fashioned Hamburgers"®, and "Quality is Our Recipe"®, which are registered on the Principal Register of the United States Patent and Trademark Office (the "Wendy's Marks"). (Kaffenbarger Decl. at ¶9.) Wendy's has the exclusive right to use and license the Wendy's Marks and derivations thereof, as well as the distinctive Wendy's System with which franchisees offer Wendy's products to the public under the Wendy's Marks. (Kaffenbarger Decl. at ¶10.) Pursuant to Franchise Agreements entered into by and between Wendy's and its franchisees, Wendy's grants franchises to qualified persons to own and operate Wendy's restaurants using the Wendy's Marks and the Wendy's System, but only in such manner and at such locations as are expressly authorized by Wendy's. (Kaffenbarger Decl. at ¶11.) Wendy's and its franchisees use the Wendy's Marks as the marks and trade identity by which the products offered by Wendy's and its franchisees are distinguished from other quick service restaurants and the products made and sold by them. (Kaffenbarger Decl. at ¶12.)

**C.    Defendants Explore The Possibility Of Operating An Authorized Wendy's Restaurant At 1209 Broadway Av. E., Mattoon, Illinois.**

In or about November 2006, Wendy's received from Defendants a request for real estate letters for various sites, including land and a building where a former authorized Wendy's restaurant had been operated at the Restaurant. (A true and correct copy of November 22, 2006 correspondence is attached hereto as Exhibit 2.) On April 20, 2007, after careful consideration and analysis regarding the surrounding market area, Wendy's authorized Defendants "to

investigate and locate for Wendy's consideration a real estate site at 1209 East Broadway Avenue, Mattoon, IL." (A true and correct copy of the April 20, 2007 correspondence is attached hereto as Exhibit 3.) The April 20, 2007 letter expressly provided that Defendants would need to complete and return an SAR and that "it [would] be necessary to authorize a real estate site review trip to evaluate the Restaurant." The April 20th letter also stated:

> Wendy's Franchise Review Council reserves the absolute right to approve the granting of franchise rights for this location. In connection with such approval, the Franchise Review Council will review at the time of your franchise request your past and current financial status, the financial and ownership structure for the proposed site, your operating history, … along with any other issues or concerns regarding the franchise relationship or development of the site…Please keep in mind that real estate acceptance does not necessarily mean the grant [of franchise and licensing rights] will be approved, and you should not presume such approval. Therefore, any and all expenses which you may incur prior to the Franchise Review Council grant are incurred at your own risk.

(Exhibit 3.) The April 20, 2007 letter further stated that, "[i]f the grant is approved by the Franchise Review Council, you will receive a Franchise Letter of Intent for your signature. The franchise grant will be based on the then current franchise agreement, terms, conditions and policies." (Exhibit 3.)

On April 20, 2007, Daniel N. Rogers, Wendy's Regional Facilities Director, conducted an on-site inspection of the Restaurant and prepared a report of his findings. (*See* June 8, 2007 Declaration of Daniel Rogers ("Rogers Decl."), a true and correct copy of which is attached hereto as Exhibit 4, at ¶3.) The Facility Assessment Report estimated remodeling costs of approximately $158,550.00 and referenced other costs associated with prior water damage and evidence of potential mold. (A true and correct copy of the Facility Assessment Report for the Restaurant is attached to the Rogers Decl. as Exhibit A.) On May 24, 2007, the Facility

Assessment Report was sent to the Defendants. (A true and correct copy of the May 24, 2007 correspondence is attached hereto as Exhibit 5.) The cover letter for the Facility Assessment Report stated that "[t]he completion of all work/upgrades on the Reports will be a condition to granting you the franchise and licensed rights for opening these restaurants." (Id.)

**D.    Defendants' Infringement Of The Wendy's Marks And Misappropriation Of Wendy's Trade Secrets and Confidential Information**

Wendy's believed Defendants to be diligently working to address the deficiencies set forth in the Facility Assessment Report. Instead, and without (1) completing the required remodeling, (2) receiving approval from the Franchise Review Council, or (3) executing a franchise agreement granting Defendants rights to operate a Wendy's restaurant at the Restaurant, Defendants opened an unauthorized Wendy's restaurant on or around May 26, 2007.

On May 29, 2007, Wendy's advised the Defendants that their operation of the Restaurant was not authorized and requested that the Restaurant be closed. (A true and correct copy of the May 29, 2007 correspondence is attached hereto as Exhibit 6.) The May 29, 2007 correspondence stated:

> We hereby demand that you IMMEDIATELY close this Restaurant, and cease its operation as a Wendy's and cease the use of the Wendy's name, trademarks and proprietary rights in connection with the Mattoon Restaurant. Wendy's still awaits the receipt of certain information and documentation from you in connection with reviewing your request to obtain the franchise rights to this store, Most important, however, is the remodeling and upgrade work (about which you have been aware) that must be completed as a condition to obtaining a franchise grant. Please understand that your failure to adhere to Wendy's request for IMMEDIATE closure will result in Wendy's pursuing legal actions against you.

(Exhibit 6.) Defendants, however, refused to comply with Wendy's request. On June 4, 2007, Wendy's again requested that Defendants cease operation and the unauthorized use of the Marks.

(A true and correct copy of the June 4, 2007 correspondence is attached hereto as Exhibit 7.)

The June 4th Demand Letter stated:

> It has recently come to our attention that you are operating the Restaurant using the Wendy's proprietary trademarks, System and know-how without prior authorization from Wendy's.    In particular, we have learned that you are operating the Restaurant as if it was an authorized Wendy's® franchise without satisfying the Wendy's requirements for operation of a Wendy's restaurant, including, but not limited to, meeting restaurant remodeling and upgrade criteria as well as execution of a Wendy's franchise agreement granting franchise and licensing rights.  In addition, your Restaurant is displaying the Wendy's ® logos without Wendy's authorization and consent.  This conduct is wholly improper, as it violates various federal and state trademark laws, and will not be tolerated.. . . Accordingly, Wendy's requests that you immediately cease operation of the Restaurant in violation of federal and state laws.  In particular, Wendy's demands that you immediately take all steps necessary to de-identify your Restaurant by removing all Wendy's ® logos from your location and ceasing to hold out the Restaurant as an authorized Wendy's franchise.

(Exhibit 7.)    Despite receiving the June 4 Demand Letter, Defendants continued to ignore Wendy's repeated demands that they cease operation of the unauthorized Restaurant and discontinue the unauthorized use of the Marks.    Instead, Defendants openly marketed the unauthorized Restaurant in the Mattoon Journal Gazette as an authorized Wendy's restaurant.  (A true and correct copy of a June 5, 2007 article appearing in the Mattoon Journal Gazette is attached hereto as Exhibit 8.)

On June 6, 2007, Mr. Rogers visited the Restaurant to determine whether Defendants had finally complied with Wendy's requests to close the restaurant and cease the unauthorized use of the Marks. (Rogers Decl. at ¶6.)  During his visit, Mr. Rogers observed that: (1) the Restaurant remains open, (2) Defendants continue their unauthorized use of the Marks, and (3) Defendants continue to hold the Restaurant out to the consuming public as an authorized Wendy's restaurant, when it is not. (Rogers Decl. at ¶6.)

## ARGUMENT

I. **WENDY'S IS ENTITLED TO A TEMPORARY RESTRAINING ORDER ENJOINING DEFENDANTS' INFRINGEMENT AND UNLAWFUL USE OF WENDY'S TRADE SECRETS AND CONFIDENTIAL INFORMATION**

Wendy's is entitled to a temporary restraining order enjoining Defendants' trademark infringement and dilution, unfair competition, deceptive trade practices, and trade secret misappropriation. Temporary injunctive relief is appropriate whenever the moving party demonstrates:

(1) a likelihood of success on the merits;

(2) that the movant has no adequate remedy at law and shall suffer irreparable injury unless the injunction issues;

(3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the defendant; and,

(4) that the injunction, if issued, would not be adverse to the public interest.

*FoodComm Int'l. v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003); *Int'l Profit Assoc., Inc. v. Paisola,* 461 F. Supp. 2d 672 (N.D. Ill. Nov. 14, 2006); *Credit Suisse First Boston, LLC v. Vender*, 2004 U.S. Dist. LEXIS 24525, *3 (N.D. Ill. Dec. 2, 2004); *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. May 14, 2001)("The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions."). As shown below, Wendy's has satisfied each of these elements.

A. **WENDY'S HAS A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS**

To show a reasonable likelihood of success on the merits, Wendy's need only establish a "trivial chance of succeeding on the merits." *Frullati Franchise Sys. Inc. v. Dana Areece & Co.*, 2001 U.S. Dist. LEXIS 8900, *4 (N.D. Ill. Jun. 27, 2001); *Int'l Profit Assoc., Inc.*, 461 F. Supp. 2d at 676 (movant must show "some likelihood of success" and that its "chances are better than

negligible"). Wendy's meets this standard.

### 1.    *Wendy's Will Prevail On Its Lanham Act Claims*

In enacting the Lanham Act, it was Congress' avowed purpose "[t]o protect trade-marks . . . to protect the public from deceit, to foster fair competition, and to secure to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." *Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1215 (8th Cir.) (quoting S. Rep. No. 1333, 1946 U.S. Code Cong. Serv. 1274, 1276), *cert. denied*, 429 U.S. 861 (1976). The Lanham Act effects this purpose through two principal provisions: (i) Section 32(1), which proscribes trademark infringement by prohibiting the use of a reproduction of a registered mark; and (ii) Section 43(a), which prohibits, *inter alia*, false designations as to the source or origin of business establishments, services and goods. Under either section, the Lanham Act "creates a claim for trademark infringement when a trademark holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product." *Home Box Office v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir. 1987).

Here, there can be no question that Defendants' continued, unauthorized use of the Wendy's Marks will cause consumer confusion and, accordingly, constitutes trademark infringement in violation of §§ 32(1) and 43(a) of the Lanham Act. A licensee "becomes associated in the public mind with the licensor or franchisor." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1504 n.4 (S.D. Fla. 1995) (quoting 3 J. McCarthy, *Trademarks and Unfair Competition* § 25.07[1], at 25-48.2 (3d ed. 1994) (quoting *Church of Scientology Int'l v. Elmira Mission of The Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986))). When a licensee uses the licensed marks in an unauthorized manner, "'the potential for consumer confusion is greater

than in the case of the random infringer'" *Id.*[1]  It is therefore clear that Defendants' unauthorized use of the Wendy's Marks in connection with the operation of their unauthorized Wendy's Restaurant is likely to cause consumer confusion and constitutes trademark infringement under the Lanham Act.

Moreover, because it constitutes trademark infringement, Defendants' infringement of the Wendy's Marks also constitutes unfair competition in violation of section 43(a) of the Lanham Act.  "As a general rule ... the same facts which would support an action for trademark infringement [under Section 32(1)] would also support an action for unfair competition [under Section 43(a)]."  *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir.), *cert. denied*, 423 U.S. 868 (1975); *accord CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001) (elements under either section are the same).  Because it is likely to prevail on its Lanham Act claims, Wendy's motion for preliminary injunction should be granted.

### 2.    *Wendy's Will Prevail On Its Claim of Misappropriation of Trade Secrets Under Illinois Law*

Wendy's is also likely to prevail on its claim for misappropriation of trade secrets.  In

---

[1]    For this reason, courts have uniformly held that a former franchisee's continued use of a trademark after the termination of the franchise agreement gives rise to consumer confusion. *See, e.g., Dunkin' Donuts, Inc. v. Towns Family, Inc.*, No. 95 C 3666, 1996 U.S. Dist. LEXIS 7982 (N.D. Ill. June 5, 1996) ("there is near certainty of confusion for purposes of § 32 when a franchisee continues to use marks owned by the franchisor after the franchise agreement has been terminated."); *Downtowner/Passport Int'l Hotel Corp. v. Norlew, Inc.*, 841 F.2d 214, 219 (8th Cir. 1988); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks ... Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated."), *cert. denied*, 465 U.S. 1102 (1984); *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990); *Agad*, 911 F. Supp. at 1504.

order to succeed on a trade secret misappropriation claim under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.,* a plaintiff must establish (1) that the information at issue was a trade secret, (2) that it was misappropriated, and (3) that it was used in the defendant's business. *Id.* The ITSA defines trade secret as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. 765 ILCS 1065/2(d). [1]

Wendy's specialized methods, procedures and techniques for establishing and operating a Wendy's restaurant constitute trade secrets under the ITSA. *See, e.g., Lucina Italia Co. v. Grappolini,* No. 01-C-6405, 2003 U.S. Dist LEXIS 7134, at *47-48 (N.D. Ill. April 24, 2003) (holding "research, designs, product formulations and production methods" were trade secrets under the ITSA); *see also BAB Systems, Inc. v. Pilatus Investment Group, Inc.,* No. 05-C-3038, 2005 U.S. Dist. LEXIS 25737, at *18 (N.D. Ill. Oct. 25, 2005) (motion to dismiss denied where franchisor of bagel shops properly pled trade secret in processes and technique of food production). "Whether the information sought to be protected qualifies as a trade secret focuses fundamentally on the secrecy of such information." *Lucina Italia Co.,* 2003 U.S. Dist LEXIS 7134, at *48-49. Wendy's takes significant efforts to maintain the confidentiality of its operating

---

[1] In determining whether a trade secret exists, Illinois courts generally look to the following factors: (1) the extent that the information is known outside of the business; (2) the extent that the information is known to employees and others within the business; (3) the measures taken to protect the information from outsiders; (4) the value of the information to competitors; (5) the amount of time, money, and effort to develop the information; and (6) the ease that the information could be acquired by others. Stampede Tool Warehouse, Inc. v. May, 272 Ill. App. 3d 580, 588 (Ill. Ct. App. 1st Dist. 1995) (holding "methods defendants used in finding prospective customers" was a trade secret).

methods and procedures.  For example, each franchisee is required to execute a Franchise Agreement wherein the franchisee agrees and acknowledges that the information is confidential and that they have a duty to maintain its confidentiality; that Wendy's unique methods are trade secrets and protection of those trade secrets is essential to Wendy's; and that the franchisee is allowed to use that information only in connection with the operation of its licensed Wendy's Restaurant.  (Kaffenbarger Decl. at ¶11.)  *See also BAB Systems, Inc,* 2005 U.S. Dist. LEXIS 25737, at \*18 (holding that efforts to keep franchisee from disclosing methods and processes of franchisor, and provision in franchise agreement that information was to be kept secret, weighed in favor of trade secret protection); *C&F Packing Co., Inc. v. Pizza Hut, Inc.,* 224 F.3d 1296, 1303 (Fed. Cir. 2000) (holding secrecy requirement under ITSA met where processes were only divulged to suppliers under secrecy agreements and plaintiff cautioned employees to guard the secrecy of the process).

Wendy's keeps its trade secrets "secret" because they are vital to the Wendy's System. Indeed, Wendy's trade secrets are part of what distinguishes Wendy's Restaurants from its many competitors; and any disclosure to Wendy's competitors would be potentially devastating. *Accord Lucina Italia Co.* 2003 U.S. Dist LEXIS 7134, at \*49 (holding that marketing plans and product formulations derive a substantial value part of their by being known to plaintiff and not its competitors).  Moreover, Wendy's developed its training program, its confidential Operations Manual, and the methods and techniques detailed therein for preparing its specialized food products, through trial and error and the expenditure of time, effort and money over a period of many years.  (Kaffenbarger Decl. at ¶8.)  They therefore constitute trade secrets.  *See Lucina Italia Co.* 2003 U.S. Dist LEXIS 7134, at \*48-49 (holding that years of studies, extensive research and expenditure of money to develop marketing plans and methods weighed in favor of

trade secret); *C&F Packing Co., Inc.,* 224 F.3d at 1303 (holding there was a valid trade secret under ITSA where plaintiff "expended a considerable amount of effort and money to develop its process [of freezing pizza]").

The remaining elements of an ITSA claim - misappropriation and use in defendants' business – are easily satisfied because Defendants are using the very methods and techniques that Wendy's taught them for use exclusively in Defendants' authorized Wendy's restaurants at their unauthorized Restaurant. (Rogers Decl. at ¶¶5-6.) Because Wendy's easily satisfies each of the elements under the ITSA, Wendy's has a high likelihood of success on its trade secret misappropriation claim.

**B.    DEFENDANTS' CONTINUING INFRINGEMENT OF THE WENDY'S MARKS, UNFAIR COMPETITION, AND MISAPPROPRIATION OF TRADE SECRETS WILL, UNLESS ENJOINED, IRREPARABLY HARM WENDY'S**

Having demonstrated the inevitable confusion that will arise from Defendants' continued infringement of the Wendy's Marks and, accordingly, Wendy's probability of success on its Lanham Act and misappropriation of trade secrets claims, the irreparable injury which Wendy's will suffer unless temporary injunctive relief is granted follows as a matter of course. For once a likelihood of confusion is established, irreparable harm is presumed. *See General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987); *Club Gene & Georgetti Ltd. Partnership v. La Luna Enter., Inc.*, 889 F. Supp. 324, 327 (N.D. Ill. 1995) ("The lack of an adequate remedy at law and irreparable harm are generally presumed in trademark infringement cases."); *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) ("trademark infringement amounts to irreparable injury as a matter of law."). It is a well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss. *Frullati*, 2001 U.S. Dist. LEXIS 8900 at *6.

The irreparable harm which Wendy's is suffering, and will continue to suffer, however, is not only a matter of legal presumption but of plain and simple fact. Without an injunction, Wendy's cannot prevent the operation of Defendants' unauthorized Restaurant. As a result, Defendants' continued use of the Wendy's Marks threatens to irreparably harm the Wendy's Marks and the goodwill associated therewith. *See S&R Corp.*, 968 F.2d at 378 ("Grounds for irreparable injury include loss of control or reputation, loss of trade, and loss or good will"; "[l]oss of control amounts to irreparable injury."); *Cle-Ware Rayco, Inc. v. Perlstein*, 401 F. Supp. 1231, 1234 (S.D.N.Y. 1975) ("Damage to goodwill and reputation are clearly intangibles which [can] not be later compensated by an award of money damages."). Indeed, "[f]ew harms are more corrosive than the inability of a trademark holder to control the quality of bogus articles thought (erroneously) to derive from it." *Hypertherm, Inc. v. Precision Prods., Inc.,* 832 F.2d 697, 700 (1st Cir. 1987). "Such potential harm [is] sufficient to justify injunctive relief." *Burger King Corp. v. Triana*, 1988 U.S. Dist. LEXIS 5102, slip op. at 2 (N.D. Ill. May 27, 1988); *S&R Corp.*, 968 F.2d at 378.

Further, "[t]here is a rebuttable presumption of irreparable harm to a plaintiff in cases of trade secret misappropriation [under the ITSA]." *QSRSoft, Inc. v. Rest. Tech., Inc.*, No. 06-C-2734, 2006 U.S. Dist. LEXIS 76120, at *32. (N.D. Ill. Oct. 19, 2006). Defendants can only rebut this presumption by demonstrating that Wendy's will not suffer *any* harm if the injunction is not granted. *Id.* Of course, any attempt by Defendants to rebut the presumption would be futile because, as explained above, Wendy's has suffered – and continues to suffer – irreparable harm.

Absent the issuance of injunctive relief, there is nothing to prevent others from unlawfully operating unauthorized Wendy's restaurants and using the Wendy's Marks and trade

secrets in connection with their unauthorized operation. It is no exaggeration to say that the very integrity of Wendy's franchise system is imperiled by such actions. Accordingly, Defendants' continued operation of their unauthorized restaurant and use of the Wendy's Marks and trade secrets threatens Wendy's with irreparable harm requiring the issuance of injunctive relief.

### C.  THE PUBLIC INTEREST WILL BE FURTHERED BY THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER

The public interest mandates that Defendants be restrained from infringing the Wendy's Marks and misappropriating Wendy's trade secrets. "[I]t is in the public interest for the Court to prevent public confusion over the source or origin of products provided to the public." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomm. Indus. Ass'n*, 929 F. Supp. at 478. Indeed, when a trademark is said to have been infringed, what is actually infringed is "the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation." *James Burroughs Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976). As one court explained:

> [T]he public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increases the probability of consumer confusion. A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder. … Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public.

*Church of Scientology Int'l. v. Elmira Mission of the Church of Scientology*, 794 F.2d at 44; *accord KFC Corp. v. Goldey*, 714 F. Supp. at 267.

In this case, the injury to the public is patent, and the injunctive relief which Wendy's seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused or defrauded into thinking that

Defendants' unauthorized Restaurant is an authorized Wendy's restaurant or that it is affiliated with or sponsored by Wendy's. Unless Defendants' continuing misuse of the Wendy's Marks and Wendy's trade secrets is enjoined, the public will continue to be confused and misled by their conduct.

### D.    THE INJURY TO WENDY'S GREATLY OUTWEIGHS ANY THREATENED HARM TO DEFENDANTS

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l., Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Plainly, that is because "'[o]ne who adopts the marks of another for similar goods acts at his own peril'" because he has no claim to the profits or advantages derived thereby. *Majeed*, 805 F. Supp. at 1006 (quoting *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir. 1978)). The balance of harms, as such, "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs.*, 929 F. Supp. at 478.

Here, the only "harm" that will come to Defendants if an injunction is issued will be the cessation of their illegal, damaging infringement of the Wendy's Marks, unfair competition, and trade secret misappropriation. Because any such harm has been brought about solely by Defendants' pirating of the Wendy's Marks and Wendy's trade secrets, they have no equitable standing to complain should their infringement and other malfeasance be temporarily enjoined. *See Majeed*, 805 F. Supp. at 1006; *see also Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977) (the hardship of requiring one who willfully infringes

another's mark to cease that infringement "merit[s] little equitable consideration."), *cert. denied*,

434 U.S. 1070 (1978); *KFC Corp. v. Goldey*, 714 F. Supp. 264, 267 (W.D. Ky. 1989).

## CONCLUSION

For the foregoing reasons, Wendy's Motion for issuance of a temporary restraining order

should be granted.

**WENDY'S INTERNATIONAL, INC.**

By: _____

One of Its Attorneys

Stephen L. Corn
**CRAIG & CRAIG**
1807 Broadway Avenue
Mattoon, IL 61938
(217) 234-6481

William J. Campbell (00378739)
Samuel B. Isaacson (06184323)
Peter M. Ellis (06271751)
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 368-4000

*Attorneys for Plaintiff*
Wendy's International, Inc.

## Local Rule 7.1(B) Certificate of Compliance

The undersigned counsel for Plaintiff hereby certifies, pursuant to Local Rule 7.1(B)(4), that the foregoing memorandum of law complies with Local Rule 7.1(B) in that it contains 5,125 words and 28,222 characters, as determined by counsel's word processing system.

William J. Campbell (00378739)